PUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 12-5035

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JIMMY ELIAB HUNTER,

Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh.  James C. Dever III, Chief District Judge.  (5:11-cr-00204-D-1)

Argued:  September 19, 2013          Decided:  November 13, 2013

Before SHEDD and WYNN, Circuit Judges, and HAMILTON, Senior Circuit Judge.

Affirmed by published opinion.  Judge Wynn wrote the opinion, in which Judge Shedd and Senior Judge Hamilton joined.

**ARGUED**: Curtis Scott Holmes, BROCK, PAYNE & MEECE, PA, Durham, North Carolina, for Appellant.  Joshua L. Rogers, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee. **ON BRIEF:** Thomas G. Walker, United States Attorney, Jennifer P. May-Parker, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

WYNN, Circuit Judge:

In Miller v. Alabama, 132 S. Ct. 2455, 2469 (2012), the Supreme Court announced that "the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders." Relying on Miller, Defendant Jimmy Eliab Hunter appeals from his sentence for being a felon in possession of a firearm, asserting that the district court erred in sentencing him as an armed career criminal based on violent felonies he committed as a juvenile. But unlike the juveniles in Miller, Defendant's sentence here punishes him for an offense he committed at the age of thirty-three, well past an age when "the distinctive attributes of youth diminish the penological justifications for imposing the harshest sentences." Id. at 2465. Thus, proportionality concerns expressed in Miller regarding youthful offenders are not implicated here. Finding Miller, Defendant's sole basis for his Eighth Amendment challenge, inapplicable, we affirm.

I.

In February 2011, at the age of thirty-three, Defendant sold a gun and nine rounds of ammunition to a confidential informant working with the Bureau of Alcohol, Tobacco, Firearms, and Explosives. Defendant was indicted and then pled guilty to violating 18 U.S.C. § 922(g)(1) by knowingly possessing a

2

firearm and ammunition in and affecting commerce after having been convicted of a crime punishable by imprisonment for a term exceeding one year.

A violation of Section 922(g) ordinarily carries a maximum sentence of ten years' imprisonment. 18 U.S.C. § 924(a)(2). However, in preparing the Presentence Investigation Report ("PSR"), the probation officer found Defendant qualified for sentencing under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). The ACCA imposes a mandatory fifteen-year minimum term of imprisonment on a defendant who violates Section 922(g) "and has three previous convictions . . . for a violent felony or a serious drug offense, or both, committed on occasions different from one another." 18 U.S.C. § 924(e)(1).

Defendant's PSR identified five violent felony convictions in his criminal history triggering the ACCA enhancement. Defendant committed four of the five offenses before turning eighteen, although in each case he was charged and convicted as an adult. In 1993, when he was fifteen, Defendant pled guilty to two charges of felony breaking and entering. And in 1995, Defendant pled guilty to robbery with a dangerous weapon and attempted armed robbery, both of which he committed at age seventeen. The fifth identified violent felony, attempted malicious conduct by a prisoner, occurred in 2003, when Defendant was twenty-five.

3

Defendant objected to the PSR and filed a motion for downward departure, asserting that the use of juvenile conduct as a basis for an ACCA enhancement violates the Eighth Amendment for the reasons set forth in Miller.[1] The district court overruled the objection, observing that "no court has extended Miller to this extent that [Defendant] is requesting in this case, and I don't think that it makes sense." J.A. 59–60. Ultimately, the district court sentenced Defendant to seventeen years' imprisonment. Defendant appeals.

II.

The sole issue presented on appeal is whether the ACCA sentencing enhancement Defendant received based on convictions for violent felonies he committed as a juvenile violates the Eighth Amendment's prohibition against cruel and unusual punishment under Miller. We review Defendant's constitutional challenge de novo. See United States v. Myers, 280 F.3d 407, 416 (4th Cir. 2002).

The Eighth Amendment protects individuals against excessive sanctions. See Roper v. Simmons, 543 U.S. 551, 560 (2005). The

---

[1] Defendant also argued that his 2004 conviction of attempted malicious conduct by a prisoner was not a violent felony. The district court found no need to reach this issue, given the four other qualifying convictions.

4

constitutional ban on cruel and unusual punishments embodies the "'precept of justice that punishment for crime should be graduated and proportioned to [the] offense.'" Graham v. Florida, 130 S. Ct. 2011, 2021 (2010) (quoting Weems v. United States, 217 U.S. 349, 367 (1910)). "The concept of proportionality is central to the Eighth Amendment." Id. "And we view that concept less through a historical prism than according to the evolving standards of decency that mark the progress of a maturing society." Miller, 132 S. Ct. at 2463 (internal quotation marks omitted).

Miller is the most recent in a series of Supreme Court decisions addressing proportionate sentencing for juveniles. See Graham, 130 S. Ct. at 2034 (holding that the Eighth Amendment prohibits life without parole for juveniles convicted of nonhomicide offenses); Roper, 543 U.S. at 578 (holding that imposing the death penalty on juveniles violates the Eighth Amendment). In these cases, the Court has emphasized that "children are constitutionally different from adults for purposes of sentencing" due to their "diminished culpability and greater prospects for reform." Miller, 132 S. Ct. at 2464.

In Miller, the case on which Defendant relies, the juvenile petitioners received mandatory sentences of life in prison without parole after being tried as adults and convicted for murders they committed when they were fourteen. Id. at 2461-63.

5

Reversing their sentences, the Court stated that automatic imposition of life without parole impermissibly "precludes consideration of [a juvenile's] chronological age and its hallmark features--among them, immaturity, impetuosity, and failure to appreciate risks and consequences." Id. at 2468. Such mandatory punishment also "disregards the possibility of rehabilitation even when the circumstances most suggest it." Id.

While Miller and its predecessors such as Graham have focused on the worst crimes and the most extreme punishments, the Supreme Court noted that "none of what [Graham] said about children--about their distinctive (and transitory) mental traits and environmental vulnerabilities--is crime-specific." Miller, 132 S. Ct. at 2465. Further, Miller's statements regarding children's "diminished culpability and greater prospects for reform" are not punishment-specific. Id. at 2464.[2]

None of this helps Defendant, however, because the sentence he challenges punishes only his adult criminal conduct. "When a defendant is given a higher sentence under a recidivism statute . . . 100% of the punishment is for the offense of conviction.

---

[2] Indeed, the Supreme Court has considered immaturity in the sentencing context before, and outside the contours of only the most heinous crimes and harshest sentences. See Gall v. United States, 552 U.S. 38, 57-59 (2007).

None is for the prior convictions or the defendant's 'status as a recidivist.'" United States v. Rodriquez, 553 U.S. 377, 386 (2008). Instead, Defendant's enhanced sentence "'is a stiffened penalty for the latest crime, which is considered to be an aggravated offense because [it is] a repetitive one.'" Id. (quoting Gryger v. Burke, 334 U.S. 728, 732 (1948)).

At least two circuits have considered challenges to sentencing enhancements based on juvenile conduct brought by adult defendants in the wake of Miller. In United States v. Hoffman, 710 F.3d 1228 (11th Cir. 2013) (per curiam), the defendant was twice convicted for drug felonies before turning eighteen, then committed a third drug felony and received a mandatory sentence of life imprisonment under 21 U.S.C. § 841(b)(1)(A).[3] In determining that the life sentence did not constitute cruel and unusual punishment, the Eleventh Circuit distinguished between Miller's prohibition on imposing mandatory life sentences on juveniles and "'consideration of prior youthful offenses when sentencing criminals who continue their illegal activity into adulthood.'" Hoffman, 710 F.3d at 1233 (quoting United States v. Wilks, 464 F.3d 1240, 1243 (11th Cir.

---

[3] Section 841(b)(1)(A) provides that if a person with "two or more prior convictions for a felony drug offense" is convicted for possessing with intent to distribute 50 or more grams of methamphetamine, he "shall be sentenced to a mandatory term of life imprisonment." 21 U.S.C. § 841(b)(1)(A)(viii).

7

2006)). Ultimately, the Eleventh Circuit upheld the enhanced sentence because "[n]othing in Miller suggests that an adult offender who has committed prior crimes as a juvenile should not receive a mandatory life sentence *as an adult*, after committing a further crime as an adult." Id.

The Tenth Circuit reached similar conclusions in United States v. Orona, 724 F.3d 1297 (10th Cir. 2013). There, the defendant argued that use of a juvenile adjudication as a predicate offense for ACCA purposes violated the Eighth Amendment and conflicted with the Supreme Court's holdings in Roper, Graham, and Miller. Id. at 1307. Rejecting that position, the Tenth Circuit observed that "[t]he problem with this line of argument is that it assumes Orona is being punished in part for conduct he committed as a juvenile." Id. The Tenth Circuit characterized this assumption as "unfounded," given consistent Supreme Court precedent "'sustain[ing] repeat-offender laws as penalizing only the last offense committed by the defendant.'" Id. (quoting Nichols v. United States, 511 U.S. 738, 747 (1994)).

The Tenth Circuit moreover rejected Orona's position that he was less morally culpable. Unlike the juveniles in Roper, Graham, and Miller, Orona was an adult "being punished for his adult conduct" and therefore could not rely on "[a] juvenile's lack of maturity and susceptibility to negative influences" to

8

"explain away [his] decision to illegally possess a firearm when he was twenty-eight years old." Id. at 1307-08. The greater possibility for reformation, identified by the Supreme Court as a distinguishing characteristic between juvenile and adult offenders, only undermined Orona, who, as a recidivist, had "been given an opportunity to demonstrate rehabilitation, but [had] elected to continue a course of illegal conduct." Id. at 1308. Accordingly, the Tenth Circuit held that the use of Orona's juvenile adjudication as a predicate offense for ACCA purposes did not violate the Eighth Amendment's ban on cruel and unusual punishment. Id. at 1309-10.

In this case, Defendant is not being punished for a crime he committed as a juvenile, because sentence enhancements do not themselves constitute punishment for the prior criminal convictions that trigger them. See Rodriquez, 553 U.S. at 385-86. Instead, Defendant is being punished for the recent offense he committed at thirty-three, an age unquestionably sufficient to render him responsible for his actions. Accordingly, Miller's concerns about juveniles' diminished culpability and increased capacity for reform do not apply here.

In sum, Defendant was no juvenile when he committed the crime for which he was sentenced here. Miller, with its concerns particular to juvenile offenders, thus does not apply,

9

and Defendant's Eighth Amendment challenge to his sentence, grounded in <u>Miller</u>, must fail.

III.

For the reasons discussed above, we affirm the judgment of the district court.

<u>AFFIRMED</u>