Cite as 2024 Ark. 12

# SUPREME COURT OF ARKANSAS
**No.** CR-23-342

| | |
|---|---|
| ROBERT J. WILLIAMS, JR.<br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br>APPELLEE | **Opinion Delivered:** February 8, 2024<br><br>APPEAL FROM THE ASHLEY COUNTY CIRCUIT COURT<br>[NO. 02CR-20-212]<br><br>HONORABLE RANDY PHILHOURS, SPECIAL JUDGE<br><br>AFFIRMED. |

**JOHN DAN KEMP, Chief Justice**

Appellant Robert J. Williams, Jr., appeals an Ashley County Circuit Court order convicting him of capital murder and aggravated assault and sentencing him to life imprisonment without parole and a term of twenty-eight months' imprisonment, respectively. For reversal, Williams argues that (1) the circuit court abused its discretion by granting the State's motion for continuance; (2) Williams's speedy-trial rights were violated; and (3) the circuit court erred in denying his *Batson* challenge during voir dire. We affirm.

## I. *Facts*

Because Williams does not challenge the sufficiency of the evidence, we provide only a recitation of the facts relevant to the arguments on appeal. On August 13, 2020, Dominic Lewis was shot six times while standing on a street in Crossett. During the course of the investigation, police identified Williams as the shooter. An eyewitness saw Williams run toward the residence of Brad Hayes. Investigators Hunter Smith and Tad Huntsman cleared

Hayes's residence, looking for Williams, and saw in plain view two rounds of live ammunition, a credit card with Williams's name on it, and other documentation with Williams's name. In the living room, they also found a Glock box for a Glock model 20 pistol. Law enforcement located Williams in Union County where they found him in a bathroom of a residence. There, they detected a strong odor of bleach. Officers also found a pair of socks and pants that later tested positive for gunshot residue and the victim's blood. Williams was taken into custody and transported to Crossett.

On September 17, 2020, the State charged Williams with capital murder, aggravated assault, terroristic threatening, and possession of firearms by certain persons. The circuit court scheduled an omnibus hearing for October 30, and on defense counsel's oral motion, the circuit court entered an order resetting the omnibus hearing for April 26, 2021. In its November 4, 2020 order, the circuit court excluded the period from October 30, 2020, to April 26, 2021, for speedy-trial purposes.

On April 23, 2021, Williams filed a motion to disqualify Circuit Judge Crews Puryear because Judge Puryear had been employed as a deputy prosecuting attorney in the Tenth Judicial District during Williams's case. According to Williams's motion, Robert Gibson III served as the prosecutor during the first hearing of Williams's case and represented that the prosecutors "would all be working on the prosecution of Williams." Subsequently, on April 27, 2021, Judge Puryear entered an order stating that he had "never worked on the case" but "out of an abundance of caution" and to avoid "an appearance of impropriety" would recuse himself from the matter. The order further stated that "[t]he period of time from today's date until this matter is reset is hereby ordered excluded for purposes of speedy trial."

2

Circuit Judge Quincey Ross was assigned to the case and entered an order on June 2, 2021, resetting the omnibus hearing for August 3, a pretrial hearing for October 18, and the jury trial for November 17–19. The circuit court also entered a second June 2 order stating that the period of time from April 26 to August 3 was excluded from the computation of speedy trial because the case had transferred from one circuit court division to another. At the scheduled October 18 pretrial hearing, defense counsel waived speedy trial, and the circuit court stated, "[W]ith that, we'll take a continuance on defense's motion[.]"

On November 3, 2021, this court assigned the case to Circuit Judge Robert Edwards. On November 10, 2021, the circuit court reset the jury trial for February 1–4, 2022, and ruled that the period of time from November 17 to February 1 would be excluded for speedy-trial purposes.

On January 5, 2022, Williams filed a motion to dismiss the charges and, alternatively, requested that the Tenth Judicial District Prosecuting Attorney's Office be disqualified from representing the State in the matter. In his motion, Williams averred that Sandra Bradshaw, a deputy prosecuting attorney, had previously served as Ashley County Circuit Court Judge and had "presided over the initial appearance, initial plea, appointment of counsel, setting of bond, setting of conditions of release, waiver of extradition, finding of probable cause, and issuance of arrest warrants[.]" He claimed that his due-process rights had been violated and, citing Arkansas Rule of Professional Conduct 1.12, requested the disqualification of Bradshaw and the entire Tenth Judicial District Prosecuting Attorney's Office. The State conceded that the Tenth Judicial District Prosecuting Attorney's Office should recuse itself and filed a motion for appointment of special prosecuting attorney. Additionally, Bradshaw

3

filed a notice of disqualification "voluntarily disqualifying [herself] from the case out of an abundance of caution."[1]

On January 19, 2022, the circuit court granted the State's motion for appointment of special prosecuting attorney and ordered the Office of the Prosecutor Coordinator to make a recommendation. In its order, the circuit court stated that "speedy trial [will] be tolled from the period of time from the filing of this motion until the Special Prosecuting Attorney has been appointed." On February 7, 2022, the circuit court appointed Special Prosecutors Jack McQuary and Ryan Cooper.

A timeline of events that transpired after February 7, 2022, is revealed in Court's Exhibit 1, which contains emails between the parties, the circuit judge, and court personnel. On February 11, the circuit court emailed the parties, attempting to schedule a half-day pretrial hearing to dispose of all the motions, and offered the dates of March 14, 16, or 17. On February 16, defense counsel responded, "Neither defense counsel is available on March 17, 2022[.]" When the circuit court inquired about March 14 or March 16, defense counsel later emailed, "I have a capital jury trial . . . that entire week." On February 16, the circuit court noted potential scheduling conflicts, stated that it wanted "to move the Williams case

---

[1]In her "Notice of Disqualification," Bradshaw stated that she served as circuit judge from November 2019 until December 31, 2020, and on January 1, 2021, she began working as a deputy prosecutor for the Tenth Judicial District. She asserted that, as a deputy prosecutor, she "never argued any motions in the above referenced matter [02CR-20-212] or made any plea offers."

We recognize that this scenario occurred at least twice—both with Puryear and Bradshaw—during the early stages of Williams's case. In light of these circumstances, we strongly caution the Tenth Judicial District Prosecuting Attorney's Office, as well as the other district prosecuting attorney offices across the state, to check for potential conflicts of interest throughout the course of the litigation. *See* Ark. R. Prof'l Conduct 1.12; Ark. Code of Jud. Conduct R. 2.11.

along[,]" and set the pretrial hearing for March 17, noting that it would "grant a continuance of Williams pre-trial if [defense counsel] request[s]." On February 18, the circuit court set the jury trial for April 18 and told the parties to "let [the court] know by Feb 22 if you have a problem." According to their emailed responses, both the defense and the State had conflicts with April 18. On February 21, the circuit court wrote, "While the case remains set for jury trial on April 18th, I have one other date available: May 3. Is that better?" On February 22, defense counsel notified the court that he had a conflict with May 3. That day, the circuit court responded, "I have to consider that this case is 18 months old and further unnecessary delays can't be approved. . . . [T]he jury trial continues to be set for April 18 (or May 3 if all counsel agree)[.]"

At a March 22, 2022 pretrial hearing, the circuit court stated that it still did not yet have a firm date for the jury trial. The prosecutor represented that the parties had discussed a date in June, but defense counsel had a conflict and was required to be in federal court at that time. The circuit court tentatively set the trial date for April 18 and reminded counsel that "this is a capital murder case." On March 29, the circuit court emailed, "Am I to assume that both of you have resolved any conflicts you had with the April 18th trial date?" On March 30, defense counsel indicated that he had a different case still pending trial. On March 31, the circuit court emailed the parties indicating that it would continue the trial from the April 18 date if Williams, or if both parties, filed a motion for continuance with speedy trial tolled.

On April 5, 2022, defense counsel emailed the circuit court and the State that the case should proceed to trial on April 18. The State responded that defense counsel's move was a last-minute switch "on the eve of trial" and requested that the circuit court set the

trial for June 27. Defense Counsel Short replied that he was available on June 13–24. Both special prosecutors agreed to those dates. Defense Counsel Rogers stated that she had a conflict with June 13–17 and proposed June 20–July 1. The special prosecutors again agreed to those dates. The circuit court stated that another case was scheduled at that time, so it left the jury trial scheduled for April 18.

On April 6, 2022, the State filed a motion for a continuance. In its motion, it stated that multiple conflicts had arisen over the past two months and that it had relied on many factors that indicated April 18 was considered a placeholder date. The State asserted that several crime-laboratory witnesses had prior commitments, and it requested that the circuit court grant its motion and continue the matter until the end of June or the proposed May 3 date. Williams responded that the State had not met the requirements of Rule 28.3(d) to justify a continuance and requested that the circuit court deny the State's motion. On April 11, 2022, the circuit court entered an order granting the State's motion and resetting the jury trial for May 23. The order stated that the delay from April 18 to May 23 constituted an excluded period because (1) the special prosecutors had only been appointed since February 8 and needed additional time to prepare the capital-murder case; and (2) several expert witnesses were unavailable for the prior trial setting.

Subsequently, the State filed motions to continue on April 13, 2022, and April 18, 2022, because of the "unavailability of essential witnesses for the date [May 23] set by this Court." Williams also filed a motion for continuance on May 9 because his counsel and mitigation specialist were unavailable during the scheduled trial dates. On May 10, 2022, the circuit court entered an order granting Williams's motion and reset the jury-trial date

for June 20–July 1, 2022, with May 23 through June 20 to constitute an excludable period, pursuant to Rule 28.3(c).

Circuit Judge Robert Edwards recused himself from the matter, and this court assigned Judge Randy Philhours to the case in an order dated May 17, 2022. On May 19, the circuit court conducted a Zoom hearing with two prosecutors and two defense attorneys present. Although three attorneys were available before December 5, one defense counsel was not available until December 5. According to Court's Exhibit 2, Defense Counsel Short represented in a May 21 email to the circuit court and the parties that "[he was] available for a two-week trial term, December 5, 2022 until February 24, 2023." Consequently, on June 8, the circuit court entered a jury-trial and scheduling order ruling that the two-week jury trial would commence on December 5.

On August 29, 2022, Williams filed a motion to dismiss for violation of his right to speedy trial because the time elapsed between arrest and trial totaled 844 days, with 571 of those days charged to the State, thereby violating his speedy-trial rights. He asserted that he was entitled to a dismissal of the charges because of the State's failure to bring him to trial within 365 days pursuant to Rule 28. The State responded that the circuit-court orders excluded certain periods of time from its speedy-trial calculation and, accordingly, only 255 days of speedy trial had run since the day of Williams's arrest.

On November 22, 2022, the circuit court entered an order denying Williams's motion for violation of speedy trial and motion for dismissal under speedy trial. The circuit court stated that 844 days elapsed from the date of arrest on August 13, 2020, through December 5, 2022, the jury-trial date, but laid out the following excludable periods—outlined in prior circuit-court orders—that were charged to the defense: (1) October 30,

2020, through April 26, 2021; (2) April 26, 2021, through August 3, 2021; (3) November 17, 2021, through February 1, 2022; (4) April 18, 2022, through May 23, 2022; (5) May 23, 2022, through June 20, 2022; (6) June 20, 2022, through December 5, 2022. The circuit court denied Williams's motion for dismissal under speedy trial and ruled that "the State [was] within the time frame allotted by the Rules of Arkansas Criminal Procedure to bring this defendant to trial."

The circuit court conducted Williams's jury trial on December 5, 2022. During jury selection, Williams made a *Batson* challenge after the State exercised one of its peremptory strikes on Juror Tilmon Barnes, a Black venireperson. After hearing arguments by both parties, the circuit court allowed the State to strike Juror Barnes. Ultimately, the jury found Williams guilty of capital murder and aggravated assault and sentenced him to life imprisonment without the possibility of parole and twenty-eight months' imprisonment, respectively, to run concurrently. On December 13, 2022, the circuit court entered a sentencing order reflecting the jury's convictions and sentences. Williams timely filed a notice of appeal.

## II. *Motion for Continuance*

For the first point on appeal, Williams argues that the circuit court's grant of the State's motion for continuance, filed April 6, 2022, was an abuse of discretion. Williams contends that (1) the State had not demonstrated due diligence in procuring unavailable witnesses from the Arkansas State Crime Laboratory; (2) the State's justification—the unavailability of four witnesses from the crime lab—was supported by an affidavit that failed to comply with the requirements of Arkansas Code Annotated section 16-63-402 (Repl.

8

2005); and (3) this court should not consider the circuit court's sua sponte justification for continuing the trial for "additional time to prepare."

The circuit court shall grant a continuance only on a showing of good cause and only for so long as is necessary, taking into account not only the request or consent of the prosecuting attorney or defense counsel, but also the public interest in prompt disposition of the case. Ark. R. Crim. P. 27.3. The general standard of review for granting or denying a motion for continuance is abuse of discretion. *Green v. State*, 2012 Ark. 19, at 3, 386 S.W.3d 413, 415. An appellant must not only demonstrate that the circuit court abused its discretion by denying the motion for a continuance but also must show prejudice that amounts to a denial of justice. *Riddell v. State*, 2011 Ark. 21, at 4.

## A. Due Diligence

First, Williams contends that the circuit court should not have granted the State's April 6 motion for continuance because the State showed a lack of due diligence in failing to subpoena its expert witnesses. The State responds that it operated with due diligence because the State's continuance "was necessitated by defense counsel"; the special prosecutors consistently maintained that they needed additional time to prepare after their appointment; and they moved swiftly to continue the case after defense counsel represented that he could try it on April 18.

A grant of a prosecutor's request for a continuance is excludable from the computation of time for speedy-trial purposes if "the continuance is granted because of the unavailability of evidence material to the state's case, when due diligence has been exercised to obtain such evidence and there are reasonable grounds to believe that such evidence will be available at a later date[.]" Ark. R. Crim. P. 28.3(d)(1). We have held that a witness's

9

testimony is evidence for purposes of this rule. *See, e.g., White v. State*, 330 Ark. 813, 824, 958 S.W.2d 519, 525 (1997).

Here, in its April 6 motion for continuance, the State recounted the numerous scheduling conflicts and stated it "ha[d] cleared wide swaths of dates in reliance on Defense Counsel's and the Court's indication of conflicts." It acknowledged that April 18 "ha[d] been viewed and spoken of as a place holder date" and that "several crime lab witnesses including the Medical Examiner, Firearms Examiner, DNA & Trace Analyst. . . have prior commitments, and as such the case should be continued pursuant to Ark. Rule of Crim. Pro. 28.3(d)." According to the attached affidavit, these expert witnesses' "testimony [was] material" to the State's case. Moreover, during the two-month interim between the appointment of the special prosecutors on February 7 and the filing of the motion to continue on April 6, the special prosecutors had reviewed Williams's file, responded to numerous defense motions, attempted to resolve scheduling conflicts, and subpoenaed witnesses for a pretrial hearing before filing its motion to continue. Thus, for these reasons, we cannot say that the State lacked due diligence, nor can we say that the circuit court abused its discretion in granting the State's motion for continuance on this basis.

## B. Prosecutor's Affidavit

Next, Williams contends that the State's affidavit failed to comply with the requirements of Arkansas Code Annotated section 16–63–402(a), which provides,

> (a) A motion to postpone a trial on account of the absence of evidence shall, if required by the opposite party, be made only upon affidavit showing the materiality of the evidence expected to be obtained and that due diligence has been used to obtain it. If the motion is for an absent witness, the affidavit must show what facts the affiant believes the witness will prove and not merely show the effect of the facts in evidence, that the affiant believes them to be true, and that the witness is not

absent by the consent, connivance, or procurement of the party asking the postponement.

We have recognized a substantial-compliance standard when reviewing affidavits filed pursuant to section 16-63-402(a). *See, e.g., Travis v. State*, 328 Ark. 442, 451–52, 944 S.W.2d 96, 100 (1997). Further, we have consistently interpreted this statute as requiring the presence of an affidavit in order to justify a continuance because of a missing witness. *Cloird v. State*, 314 Ark. 296, 300, 862 S.W.2d 211, 213 (1993).

Here, the special prosecutor's affidavit attached to the State's motion for continuance provides in relevant part:

2. Dr. Adam Craig (Medical Examiner), Ms. Rachel Ganley (Serology/Trace), Zach Hefler (Firearms) and Ms. Lindsey Heflin (DNA) are all necessary witnesses for the State. On April 6, 2022, after finally getting what appears to be a final date set for the defendant's trial, the State learned that Dr. Craig is unavailable to testify either week of [the] current setting, Ms. Rachel Ganley is unavailable to testify either week of [the] current setting, Zach Hefler would be available the second week but not the first, and Ms. Lindsey Heflin would be available on April 19, 20, 21, and 22, but none of the second week, all due to being previously subpoenaed to other Courts throughout the State.

3. The State anticipates that each of these witnesses will testify, respective of their fields as experts and that testimony is material and will assist the trier of fact.

4. The State is confident that it will be able to procure these witnesses['] attendance at trial should the Court grant its motion.

5. In accordance with Ark. Code Ann. § 16-63-402 (continuance – absent witness or evidence), Rules 27.3 (continuance) and 28.3(d)(1) (speedy trial – tolling) of the Arkansas Rules of Criminal Procedure, and *Hill v. State*, 321 Ark. 354 (1995), the State has: (1) been diligent in attempting to procure the attendance of these witnesses; (2) their anticipated testimony is material and will assist the trier of fact; (3) the likelihood of being able to procure them as witnesses in the event of postponement is high; and (4) the State has filed this affidavit stating the facts which would be proved by their testimony along with a statement that the State believes that everything contained herein is true.

6. Their absence is not due to consent, connivance, or procurement by the State.

Special Prosecutor McQuary signed the sworn affidavit on April 6, 2022.

While the State's affidavit did not detail the precise testimony of these four experts, the affidavit named each expert witness and each witness's respective area of specialty and expertise. It stated that "each of these witnesses will testify, respective of their fields as experts and that testimony is material and will assist the trier of fact." The substance of the witnesses' testimony was also outlined in reports from the crime lab dating back to August 2020. Thus, under these specific circumstances, we conclude that the State's affidavit substantially complied with the requirements set forth in section 16-63-402(a).

## C. Additional Arguments

Last, Williams makes three additional assertions: (1) this court should not consider the circuit court's sua sponte justification for continuing the trial for the State's "additional time to prepare," as they solely "need[ed] additional time to acquire expert witnesses"; (2) in the event this court considers the sua sponte justification, this court should find it meritless and unsupported because "the record is bare as to support for the trial court's claim that the State . . . needed additional time to prepare"; and (3) this court should dismiss the charges due to circuit court's abuse of discretion or that we should reverse and remand for a new trial without these four witnesses' testimony.

Our courts have made it clear that they will not consider an argument when the appellant presents no citation to authority or convincing argument in its support, and it is not apparent without further research that the argument is well taken. *Hollis v. State*, 346 Ark. 175, 179, 55 S.W.3d 756, 759 (2001). In this case, Williams's three additional arguments consist of only one paragraph each without further development and without

any citation to authority. We therefore decline to address these undeveloped arguments on appeal.

For the reasons stated in the foregoing analysis, we hold that Williams has failed to demonstrate that the circuit court abused its discretion in denying his motion for a continuance and has failed to show that he has suffered any prejudice. *See Riddell*, 2011 Ark. 21, at 4. Accordingly, we affirm on this point.

### III. *Speedy Trial*

For the second point on appeal, Williams argues that the State failed to bring him to trial within twelve months from the date of his arrest as required by Arkansas Rule of Criminal Procedure 28.1(b). Williams contends that the time period from the date of his arrest on August 13, 2020, to his trial on December 5, 2022, equals 844 days with 571 days charged to the State—a total that exceeds the 365-day speedy-trial requirement. The State responds that the time period from Williams's date of arrest on August 13, until the date that he filed his speedy-trial motion on August 29, 2022, totaled 746 days with 79 days charged to the State prior to the filing of his motion.[2]

---

[2]Specifically, Williams lists the following pertinent periods that should be charged to the State: (1) August 13, 2020, through October 30, 2020 (no basis to exclude time); (2) April 26, 2021, through November 10, 2021 (recusal of circuit judge and transfer of case); (3) November 10, 2021, through January 18, 2022 (transfer to Circuit Judge Ross); (4) January 18, 2022, through April 18, 2022 (disqualification of Ashley County Prosecuting Attorney's Office); (5) April 18, 2022, through May 23, 2022 (State's alleged failure to send subpoenas and witness unavailability); (6) May 23, 2022, through June 20, 2022 (lack of due diligence, failure to subpoena any witness, and scheduling process); (7) June 20, 2022, through December 5, 2022 ("trial court's manipulation of the trial setting process to necessitate a defense request for continuance").

The State asserts that the excludable periods charged to the defense include (1) October 30, 2020, through April 26, 2021 (continued omnibus hearing); (2) April 27, 2021, through November 17, 2021 (continuance of omnibus hearing, and Judge Puryear recused

A. Applicable Law

The constitutional right to a speedy trial, as embodied in Rule 28.1 of the Arkansas Rules of Criminal Procedure, is available to an accused in all criminal prosecutions. *Parker v. State*, 2023 Ark. 41, at 11, 660 S.W.3d 815, 823. The Sixth Amendment provides, "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. This court adopted Rule 28 for the purpose of enforcing the constitutional right to a speedy trial. *Parker*, 2023 Ark. 41, at 11, 660 S.W.3d at 823.

Pursuant to Rule 28.1, a defendant must be brought to trial within twelve months unless there are periods of delay that are excluded under Rule 28.3. The twelve-month period for bringing an accused to trial begins to run on the date of arrest or service of summons. Ark. R. Crim. P. 28.2(a). For purposes of calculating speedy trial, the relevant time period concludes with the filing of the motion to dismiss, because it is when the motion is filed that a defendant alleges the State's twelve-month period has run. *Eagle v. State*, 2012 Ark. 371, at 4–5. If the defendant is not brought to trial within the requisite time, the defendant is entitled to have the charges dismissed with an absolute bar to prosecution. *Parker*, 2023 Ark. 41, at 11, 660 S.W.3d at 824. Once a defendant establishes a prima facie

himself from the case, and Judge Ross was assigned to the case and reset the omnibus hearing); (3) November 17, 2021, through February 1, 2022 (Williams's motion to continue); (4) February 1, 2022, through April 18, 2022 (Tenth Judicial District Prosecuting Attorney's Office recused, and the circuit court requested appointment of special prosecutor); (5) April 18, 2022, through May 23, 2022 (unavailability of witnesses); (6) May 23, 2022, through June 20, 2022 (Williams's motion to continue the May 23 trial); (7) June 20, 2022, through August 29, 2022 (Williams's motion to continue trial through June 20, defense counsel not available until December 5, and circuit court set jury trial for December 5).

case of a speedy-trial violation, the burden shifts to the State to show that the delay was the result of the defendant's conduct or was otherwise justified. *Id.*, 660 S.W.3d at 824.

Rule 28.3 governs the applicable excluded periods when calculating speedy-trial periods and provides in pertinent part:

> The following periods shall be excluded in computing the time for trial. Such periods shall be set forth by the court in a written order or docket entry, but it shall not be necessary for the court to make the determination until the defendant has moved to enforce his right to a speedy trial pursuant to Rule 28 unless it is specifically provided to the contrary below. The number of days of the excluded period or periods shall be added to the time applicable to the defendant as set forth in Rules 28.1 and 28.2 to determine the limitations and consequences applicable to the defendant.

> (a) The period of delay resulting from other proceedings concerning the defendant, including but not limited to an examination and hearing on the competency of the defendant and the period during which he is incompetent to stand trial, hearings on pretrial motions, interlocutory appeals, and trials of other charges against the defendant. No pretrial motion shall be held under advisement for more than thirty (30) days, and the period of time in excess of thirty (30) days during which any such motion is held under advisement shall not be considered an excluded period.

> . . . .

> (c) The period of delay resulting from a continuance granted at the request of the defendant or his counsel. All continuances granted at the request of the defendant or his counsel shall be to a day certain, and the period of delay shall be from the date the continuance is granted until such subsequent date contained in the order or docket entry granting the continuance.

> (d) The period of delay resulting from a continuance (calculated from the date the continuance is granted until the subsequent date contained in the order or docket entry granting the continuance) granted at the request of the prosecuting attorney, if:

> (1) the continuance is granted because of the unavailability of evidence material to the state's case, when due diligence has been exercised to obtain such evidence and there are reasonable grounds to believe that such evidence will be available at a later date; or

(2) the continuance is granted in a felony case to allow the prosecuting attorney additional time to prepare the state's case and additional time is justified because of the exceptional complexity of the particular case.

. . . .

(h) Other periods of delay for good cause.

Ark. R. Crim. P. 28.3. We conduct a de novo review on appeal to determine whether specific periods of time are excludable under speedy-trial rules. *McCray v. State*, 2020 Ark. 172, at 6, 598 S.W.3d 509, 513.

## B. Speedy-Trial Calculation

The speedy-trial calculation spans from the date of Williams's arrest on August 13, 2020, through August 29, 2022—the date of the motion to dismiss for speedy-trial violation—for a total of 747 days. *See Parker*, 2023 Ark. 41, at 12, 660 S.W.3d at 824. Hence, we set forth the following analysis of the relevant time periods in Williams's case, including excludable periods pursuant to Rule 28.3, as follows:

### 1. *August 13, 2020, through October 29, 2020*

Williams's speedy-trial clock began to run on August 13, 2020, the date of his arrest. *See* Ark. R. Crim. P. 28.2(a). Speedy-trial time ran for 78 days from Williams's arrest through October 29, 2020, when the circuit court granted a continuance. This period of 78 days is charged to the State.

### 2. *October 30, 2020, through April 26, 2021*

Speedy trial was tolled from October 30, 2020, the original date of Williams's omnibus hearing, until April 26, 2021, the new date of the omnibus hearing, because of a motion for continuance filed by Williams and granted by the circuit court. Pursuant to Rule 28.3(a) and (c), this excludable period equals 179 days and is charged to the defense.

16

### 3. *April 27, 2021, through August 3, 2021*

On April 27, 2021, Circuit Judge Puryear entered an order recusing himself from the case and tolled speedy trial "until this matter is reset" because he had served as a deputy prosecuting attorney for the Tenth Judicial District when Williams's case began. Circuit Judge Ross assumed the case, reset the omnibus hearing for August 3, and excluded the period from April 26 through August 3 because the case transferred from Division 1 to Division 4 of the circuit court.[3] Pursuant to Rule 28.3(h), the recusal of a sitting judge and corresponding delay constitutes good cause. *See Clements v. State*, 312 Ark. 528, 532–33, 851 S.W.2d 422, 424 (1993). Thus, speedy trial was tolled from April 27 through August 3. This excludable period totals 99 days and is charged to the defense.

### 4. *August 4, 2021, through November 16, 2021*

The period between August 4 and November 16 constitutes a gap in the circuit court's November 22, 2022 order denying Williams's speedy-trial motion. Thus, speedy trial ran from August 4 through November 16, as this period is not covered by a circuit court order. This period constitutes 105 days and is charged to the State.

### 5. *November 17, 2021, through February 1, 2022*
*January 19, 2022, through February 7, 2022*

Because these time periods overlap, we discuss them in tandem. First, at the October 18, 2021 omnibus and pretrial hearing, the circuit court granted Williams's motion for continuance. *See* Ark. R. Crim. P. 28.3(c). This ruling is reflected in the circuit court's November 10, 2021 order stating that November 17 through February 1 was excluded from

---

[3]The June 2, 2021 order states that the excludable period begins on April 26, but by our speedy-trial calculation, the excludable period begins on April 27.

speedy-trial computation pursuant to Rule 28. This excludable period equals 77 days and is charged to the defense.

Second, the State contends that January 19 through April 10 should be excluded because the circuit court requested a special prosecutor and ruled in a pretrial hearing that "the delay from today until a special prosecutor is appointed will be an excluded period for speedy trial for the reason that there is no prosecuting attorney in this case at this point."

We have held that conflicts requiring prosecutors to recuse constitute good cause for excluding time. *See Divanovich v. State*, 273 Ark. 117, 118, 617 S.W.2d 345, 346 (1981); Ark. R. Crim. P. 28.3(h). Here, the circuit court entered a January 19 order for appointment of special prosecuting attorney and stated that "speedy trial [will] be tolled from the period of time from the filing of this motion until the Special Prosecuting Attorney has been appointed." On February 7, the circuit court appointed Jack McQuary and Ryan Cooper to serve as special prosecutors. This period from January 19 through February 7 equals 20 days, but considering the previous overlapping order, the excludable period from February 2 through February 7 equals 6 days. Thus, the total excludable period from both overlapping orders (77 + 6) equals 83 days, which is charged to the defense.

### 6. *February 8, 2022, through April 17, 2022*

This time period reflects a gap in the circuit court's November 22, 2022 order, and no order includes these dates as an excludable period. Thus, this period of 69 days is charged to the State.

### 7. *April 18, 2022, through May 23, 2022*

As previously discussed, the circuit court in its April 11, 2022 order excluded the period from April 18 through May 23 because several expert witnesses for the State were

unavailable for the jury-trial date. Pursuant to Rule 28.3(d)(1), this time period is excludable for speedy-trial purposes because of the unavailability of witnesses material to the State's case. This excludable period of 36 days is charged to the defense.

### 8. *May 24, 2022, through June 20, 2022*

On May 9, 2022, Williams filed a motion for continuance noting conflicts with the May 23 jury-trial date that the circuit court had set. In its May 10, 2022 order, the circuit court granted Williams's motion and excluded the time period from May 23 through June 20.[4] This excludable period constitutes 28 days and is charged to the defense. *See* Ark. R. Crim. P. 28.3(c).

### 9. *June 21, 2022, through August 29, 2022*

Per the circuit court's November 22, 2022 order denying the motion to dismiss for violation of speedy trial, the circuit court excluded the time period of June 20 through December 5 because of defense counsel's representation in the circuit court's Zoom call that he would be unavailable for jury trial until December 5. Further, according to Court's Exhibit 2, defense counsel represented in a May 21 email to the circuit court that he would not be available for a two-week jury trial until December 5 to February 24, 2023. We conclude that the actual excludable period is from June 21 through August 29, the date that Williams filed his motion to dismiss for violation of speedy trial. *See* Ark. R. Crim. P. 28.3(c); *Eagle*, 2012 Ark. 371, at 4–5. Thus, this excludable period totals 70 days and is charged to the defense.

---

[4]The order states that the excludable period begins on May 23, but under this court's speedy-trial calculation, it begins on May 24.

19

## 10. *Conclusion*

In sum, according to the above calculations from August 13, 2020, the date of Williams's arrest, through August 29, 2022, the date of his motion to dismiss for violation of speedy trial, the number of days charged to the State (78 + 105 + 69) is 252. In other words, Williams was held for a total of 252 days during which speedy trial was not tolled. This time period does not exceed the requisite 365-day period, as set forth in Rule 28.1(b). Therefore, based on our de novo review to determine whether specific periods of time are excludable under our speedy-trial rules, we hold that Williams was brought to trial within the twelve-month period required by Rule 28. *See* Ark. R. Crim. P. 28.1(b). Accordingly, we affirm the circuit court's ruling on this point.

## IV. *Batson Challenge*

For the final point on appeal, Williams argues that the circuit court erred in denying his *Batson* challenge when the State excused Juror Barnes for a "classically pretextual reason." Specifically, he asserts that the State struck Barnes for race under the pretext of being disinterested in the judicial process. The State counters that the circuit court struck Barnes for a race-neutral reason—that is, "his lack of participation in answering questions on his juror questionnaire and during voir dire[.]"

Pursuant to *Batson v. Kentucky*, 476 U.S. 79 (1986), a prosecutor in a criminal case may not use peremptory strikes to exclude jurors solely on the basis of race. *McMiller v. State*, 2014 Ark. 416, at 3, 444 S.W.3d 363, 365. At trial, a three-step process is required to effectuate the dictates of *Batson* and its progeny. *Id.*, 444 S.W.3d at 365. First, the opponent of the peremptory strikes must present facts to make a prima facie case of purposeful discrimination. *Id.*, 444 S.W.3d at 365. Second, upon a showing of a prima facie case of

20

systematic discrimination, the State is required to give a race-neutral explanation for the strikes. *Id.*, 444 S.W.3d at 365. Third, the circuit court must decide whether the opponent of the strike has proved purposeful discrimination. *Id.*, 444 S.W.3d at 365. On appeal, we will not reverse a circuit court's findings on a *Batson* objection unless the decision is clearly against the preponderance of the evidence. *Id.*, 444 S.W.3d at 365. Some deference is accorded the circuit court in making this decision because it has the opportunity to observe the parties and determine their credibility. *Id.*, 444 S.W.3d at 365–66. Unless discriminatory intent appears in the prosecutor's explanation, the reason given will be considered race neutral. *Flowers v. State*, 362 Ark. 193, 204, 208 S.W.3d 113, 122 (2005) (citing *Hernandez v. New York*, 500 U.S. 352, 365 (1991) (stating that "[a]s with the state of mind of a juror, evaluation of the prosecutor's state of mind based on demeanor and credibility lies 'peculiarly within a trial judge's province'")).

During jury selection, the following colloquy occurred:

| THE COURT: | Mr. Barnes. Why did you strike Mr. Barnes? |
|---|---|
| PROSECUTOR: | Because he gave absolutely no head nods, no head shakes. You would have to call directly on him to try and get an answer out of him, but he showed absolutely no interest whatsoever in answering really either [party's] questions up there at all, and at the start, I informed all those jurors that it's very important to get answers from each of them. |
| THE COURT: | All right. Mr. Short. |
| DEFENSE COUNSEL: | I don't think he ever asked him a direct question. I also will tell the Court that case law suggests that it is – that often it . . . has been shown to be racial bias when you say that this juror didn't like me or wasn't responsive to me. That is just – that's a code word for I was going to strike this black person, and that's case law. I've written briefs on it. I mean, that's they [sic] way you can get |

21

|                     | around just to say they didn't seem to like me, and that's been proven. |
|---------------------|---------|

THE COURT:             Last shot at Mr. Barnes.

PROSECUTOR:            Judge –

SECOND PROSECUTOR:     Also, in regards to the questioning being responsive to punishment, he gave no responses, no head nods, no responses. He seemed just completely disinterested.

PROSECUTOR:            And I would like to add, Your Honor, that there are several African-Americans still available in the jury pool to be called.

SECOND PROSECUTOR:     Your Honor, looking back at Mr. Barnes['s] questionnaire, it is not nearly as extensive as it should be.

THE COURT:             Okay. . . . I will let you strike Mr. Barnes, but that's two out of two, and those kind of numbers concern me going forward. How about that?

PROSECUTOR:            Yes, sir.

THE COURT:             You have used three, Mr. State. You have used two, Mr. Defense.

Here, the State had exercised a peremptory strike on three people—two Black jurors, including Barnes, and a white juror. After defense counsel objected to striking Barnes, the State gave a race-neutral reason—lack of involvement in the judicial process—for striking him. The State also emphasized that "there are several African-Americans still available in the jury pool." The circuit court then had an opportunity to judge the demeanor of the State's attorney and decided that the race-neutral explanation given for the peremptory strike was valid. We defer to the circuit court's ability to gauge the State's demeanor and credibility, as the evaluation of the prosecutor's mind is within the province of the circuit court. *See Hernandez*, 500 U.S. at 365. Therefore, we hold that the circuit court properly

allowed the State to strike Barnes, and the circuit court's decision to deny the *Batson* claim is not clearly against the preponderance of the evidence. Accordingly, we affirm.

V. *Rule 4-3(a)*

In compliance with Arkansas Supreme Court Rule 4–3(a), this court has examined the record for all objections, motions, and requests made by either party that were decided adversely to Williams. No prejudicial error has been found.

Affirmed.

*Short Law Firm*, by: *Lee D. Short*, for appellant.